## GULLEDGE BROTHERS LUMBER COMPANY v. WENATCHEE LAND COMPANY.[1]

June 27, 1913.

Nos. 18,140—(178).

**Penal statute — enforcement in another state.**

1. The question whether a statute of one state, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act.

**Nonpayment of license fee — penalty not enforceable in Minnesota.**

2. Plaintiff is a corporation created under the laws of the state of Washington. The statutes of Washington require corporations to pay an annual license fee, and provide as a penalty for nonpayment of such fee that no corporation in default thereof shall be permitted to maintain any action in the courts of that state. Plaintiff was in default of payment of such license fee when this action was brought. The supreme court of Washington has construed these statutes as revenue acts pure and simple, has held

---

[1] Reported in 142 N. W. 305.

that the provisions thereof are for the purpose of enabling the state to enforce the payment of its revenue, and that a corporation in default does not forfeit the right to exist but continues to be a corporation until a for-feiture is adjudicated by proper proceedings in a proper court. *Held:* That the purpose of the acts is to punish an offense against the public justice of the state of Washington, that they are of the class of penal acts which will not be enforced outside of the state where they were enacted, and that plaintiff may maintain an action in this state.

**Dissolution of corporation.**

3. The principle that a corporation which has been dissolved by proper proceedings in the state of its creation could not thereafter commence or maintain an action in any other state, is not applicable to this case since, according to the laws of Washington, the plaintiff corporation has not been dissolved.

After the former appeals reported in 111 Minn. 418, 127 N. W. 395, 923, 115 Minn. 491, 132 N. W. 992, 118 Minn. 273, 136 N. W. 738, the action was tried on the plea of abatement set out in the answer to the third amended complaint, before Hale, J., who made findings and ordered judgment dismissing the action. From an or-der granting plaintiff's motion for a new trial, defendant appealed. Affirmed.

*Arthur W. Selover* and *Brooks & Jamison,* for appellant.

*Jay W. Crane,* for respondent.

HALLAM, J.

Plaintiff was incorporated under the laws of the state of Washing-ton, in September, 1903. This action was commenced June 4, 1909, to recover damages for breach of a contract. The complaint states a cause of action. Gulledge Brothers Lumber Co. v. Wenatchee Land Co. 111 Minn. 418, 127 N. W. 395, 923.

Defendant in its answer pleaded, by way of abatement, that plain-tiff was incapacitated from commencing and maintaining this action by reason of its failure to pay an annual license tax imposed by the laws of the state of Washington. After plaintiff rested its case, the court heard defendant's evidence under its plea in abatement, and plaintiff's evidence in reply. The court decided in defendant's favor on this plea and ordered the action dismissed.

The facts found by the court are, in substance, as follows:

That the statutes of the state of Washington have for some years contained a provision that every corporation, incorporated under the laws of that state, shall, on or before the first day of July of each and every year, pay to the secretary of state, for the use of the state, a license fee; and the further provision that:

"No corporation shall be permitted to commence or maintain any suit, action or proceeding in any court of this state, without alleging and proving that it' has paid its annual license fee last due," and that "it shall be the duty of the secretary of state to strike from the records of his office the names of all incorporations which have neglected for a period of two years to pay their annual license fees." Sections 3714, 3715, Remington & Ballinger's Codes and Statutes.

It is further found by the court that plaintiff defaulted in the payment of said license fees for the years 1904, 1905, 1906, 1907 and 1908, and was in default in the payment of said license fees at the time of the commencement of this action, June 4, 1909; that on account of nonpayment of said license fees, plaintiff could not have commenced and could not have maintained this action in the courts of the state of Washington; and, as conclusions of law from these facts, the court found that plaintiff could not commence and maintain this action in Minnesota. A motion for a new trial was granted on the ground that the statute mentioned is penal in its nature and cannot be enforced in this state, and is therefore no defense to this action. Defendant appeals.

The order granting a new trial must be affirmed.

1. It is sometimes stated in general terms that the courts of one state will not enforce the penalties imposed by another state; Cook, Corporations, § 223; Story, Conflict of Laws, §§ 620, 621; Wharton, Conflict of Laws (3d ed.) § 4; that penal laws are strictly local and cannot have any operation beyond the jurisdiction of the state or country where they were enacted; Scoville v. Canfield, 14 Johns. 338, 340, 7 Am. Dec. 467. This is perhaps too broad a statement of the rule. A statute penal in its nature may create an obligation in favor of a private individual. Obligations of this sort will be enforced in any jurisdiction. Huntington v. Attrill, 146 U. S. 657;

13 Sup. Ct. 224, 36 L. ed. 1123; Fitzgerald v. Weidenbeck, 76 Fed. 695; Thompson, Corporations (2d ed.) § 4776.

The true rule, as we conceive it to be, is laid down in Huntington v. Attrill, supra. Mr. Justice Gray said:

"The question whether a statute of one state, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another state, depends upon the question whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act."

In harmony with the same principle, it was said in State of Wisconsin v. Pelican Insurance Co. 127 U. S. 265; 8 Sup. Ct. 1370, 32 L. ed. 239:

"The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the state for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue, or other municipal laws."

In that case a statute imposing a penalty upon any insurance company of another state doing business in Wisconsin without having deposited with the proper officer of the state a full statement of its property, and of its business done during the previous year, was held in the strictest sense a penal statute. See also Henry v. Sargeant, 13 N. H. 321, 332, 40 Am. Dec. 146.

The distinction above mentioned is further exemplified by the language of Lord Watson in Huntington v. Attrill, 8 L. T. Rep. 341, as follows:

"In its ordinary acceptation, the word 'penal' might embrace penalties for infractions of general law which did not constitute offenses against the state; it might, for many legal purposes, be applied with perfect propriety to penalties created by contract; and it therefore, when taken by itself, failed to mark that distinction between civil rights and criminal wrongs, which was the very essence of the international rule."

It is there further said: "The rule had its foundation in the well recognized principle that crimes, including in that term all breaches

of public law punishable by pecuniary mulct or otherwise, at the instance of the state government, or of some one representing the public, were local in this sense, that they were only cognizable and punishable in the country where they were committed." Cited with approval in Huntington v. Attrill, 146 U. S. 657, 681, 13 Sup. Ct. 224, 233, 36 L. ed. 1123.

2. Applying these principles, it seems clear that the statutes of Washington in question are of the class of penal acts which will not be enforced outside of the state where they were enacted. These statutes have been construed by the supreme court of that state. State of Washington v. Howell, 67 Wash. 377, 121 Pac. 861. That case arose as follows: The original act contained a provision that a corporation whose name has been stricken from the records of the office of the secretary of state for failure to pay its license fee, may apply to said official for reinstatement *at any time within six months thereafter,* and upon payment of all license fees and of an additional penalty, it may be reinstated, but, if such application is not made within such period of six months, the secretary of state shall enter upon his records a notation that such corporation is dissolved, and it shall thereupon be dissolved, and the trustees of such corporation shall hold the title to the property of the corporation for the benefit of its stockholders and creditors, to be disposed of under appropriate court proceedings. In 1911 this act was amended so that a corporation whose name has been so stricken may make application for reinstatement *at any time* after its name has been stricken from the records. It was contended that the act of 1911 violated a provision of the Constitution of Washington which prohibits the remission of a forfeiture. The court held otherwise, and in defining the meaning of the acts said:

"These respective acts were not primarily directed against corporations; they were revenue acts pure and simple, and the provisions directed against corporations were for the purpose of enabling the state to enforce the payment of its revenue. * * * The corporation continues to exist until the sovereignty which created it shall, by proper proceedings in a proper court, procure an adjudication of forfeiture and enforce it. * * * The act of the secretary of state in

striking the corporation from the records of his office, or in noting it as dissolved for failure to pay its license fees, was not a forfeiture of the corporation, so that any act of the legislature providing for a reinstatement of such corporation would be void as the remission of a forfeiture."

This construction placed by the supreme court of Washington upon the meaning of these acts is binding upon us. It clearly appears therefrom that the purpose of these acts is not "to afford a private remedy to a person injured by the wrongful act," but to "punish an offense against the public justice of the state;" that it is a statute imposing a penalty "for the protection of its revenue  *  *  *  laws" and is cognizable only in the state where made. In order to secure payment of a revenue license fee, the state of Washington denies to a corporation in default of such payment the right to sue in its courts, but that state still recognizes its existence as a corporation. So long as such a corporation is permitted to exist by the government of the state of its creation this state will not, for the purpose of enforcing the revenue laws of that state, deny to such a corporation the right to sue in our courts.

3. We do not overlook the principle that the capacity of a corporation and the powers possessed by it are, in a general sense, primarily determined by the laws of the state or country in which it was created, and that it can exercise no powers except those derived from its charter or the laws of that state. 1 Wharton, Conflict of Laws (3d ed.) § 105a. If, under the laws of the state of its creation, it has no right to sell a particular commodity or enter into a particular class of contracts, such power cannot be conferred by the laws of another state. 19 Cyc. 1214; Citizen's Light & Power Co. v. Seattle Gas & Electric Co. 125 Fed. 1001, 60 C. C. A. 686; Myatt v. Ponca Imp. Co. 14 Okla. 189, 78 Pac. 185, 68 L.R.A. 810. If it is actually dissolved by proper proceedings in its home state, its existence is ended and it could not thereafter commence or maintain an action or exercise any corporate functions anywhere. But these principles are not applicable here. We have here no question of the powers of this corporation to contract and to do business. Its powers in that particular are not questioned. We have no question of the dissolution of this

corporation. It has not been dissolved. We have only the question whether we shall deny it the right to sue, as a penalty for its failure to contribute its share to the revenues of the state of Washington. On principle and authority we decline to do so, and we hold that plaintiff may maintain an action in this state.

Order affirmed.

Holt, J., took no part.

On July 11, 1913, the following order was filed:

Defendant on petition for rehearing cites the case of Soderberg v. McRae, 70 Wash. 235, 126 Pac. 538, to the effect that when a corporation is dissolved under the statute cited in the opinion, the property of the corporation passes immediately to the trustees, and defendant urges that an action cannot accordingly be maintained by the plaintiff corporation. The decision above cited cannot affect the disposition of this appeal. The trial court did not find that the corporation had been dissolved. Perhaps the evidence received required a finding to that effect, but, if so, it further appears that evidence was offered and rejected to the effect that the corporation had been reinstated. This evidence should have been received. If not admissible under the pleadings as they stood, opportunity should have been given to amend. If this reinstatement is established on the trial, it is complete rebuttal of the defense in abatement. See Eastman v. Watson, 72 Wash. 522, 130 Pac. 1144.

Ordered, that the petition for rehearing herein be and the same hereby is denied and stay vacated.